

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00160-CR

_____

JACKIE LEE CARPENTER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 420th Judicial District Court
Nacogdoches County, Texas
Trial Court No. F1118291

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Early September 15, 2008, at an often burglarized store, Nacogdoches[1] police discovered a freshly broken window and, inside the window, some still-wet blood. Approximately two and a half years later, authorities got a lead that enabled them to obtain and test the blood of Jackie Lee Carpenter. DNA tests revealed that the blood taken from the store in 2008 matched Carpenter's blood obtained in 2011.

After a jury trial, Carpenter was found guilty of burglary of a building and sentenced to eight years' confinement. On appeal, Carpenter argues that the evidence supporting the jury's verdict is legally insufficient.

Because the evidence is sufficient, we affirm the trial court's judgment.

Corporal Brent Handy of the Nacogdoches Police Department made the initial discovery. He noticed that a window in the side of the store was broken. According to Handy, the store had been frequently vandalized and broken into in the past. When he approached the window on foot, he noticed that small pieces of the window's glass were still falling, indicating to him that "this was pretty recent." Just inside the window was a large chunk of rock or concrete that "looked like it had been used to break" the window. Inside the window, the tobacco products within arm's reach of the window were "out of place" and had "obviously been manipulated." To Handy, it looked like someone reached in and grabbed "whatever [they] wanted to that was

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

within reach there." On the ground, outside the broken window, Handy remembered seeing "some objects . . . possibly cigarettes," but he did not remember exactly what objects he saw.

In response to an audible alarm from the store, the local police were notified, and Officer Zachary Mills was dispatched to the scene, arriving shortly after Handy. Beneath the broken window, Mills saw "a lot of products" on the ground, including cigarettes and cigars, "as if dropped there." From the circumstances, it appeared to Mills that someone broke the window, took some items from inside the business, and dropped a few things on their way out.

Handy and Mills noticed blood in two different places on the window. Handy said that the blood "was still somewhat liquid, but it had not hardened as if it had been exposed into the elements for awhile." Mills described the blood as being "still wet," "to the point to where if you touched it, it would still smear." Mills collected two blood samples. Neither officer saw anyone else at the scene.

At the time the officers arrived, the business was closed, the doors were locked, and all the lights were off. The owner of the store, Lee Om, testified that the business had closed that night at 10:00 p.m. and would not reopen until 5:30 a.m. After doing an inventory, Om testified that items were missing from the business. Both Om and the owner of the building in which the store was located, John Rudisill, testified at trial that no one had permission to be there that night after business hours.

Troy Mach, an investigator with the Nacogdoches Police Department at the time of the incident, was assigned to this case. At the time of the incident, there was no usable fingerprint evidence taken from the scene, and the police had no suspects. In February 2011, Mach received

information that was enough to obtain a search warrant for a blood specimen from Carpenter. The record does not indicate the nature or content of the information Mach received.

The blood samples taken from the scene were sent to the Texas Department of Public Safety (DPS) crime laboratory in Houston, Texas. Jennifer Moreno, a forensic scientist at the DPS crime laboratory, tested and compared one of the samples taken from the scene with the DNA profile extracted from Carpenter's blood. She testified that the DNA found at the scene matched the DNA in Carpenter's blood.[2] The other blood sample taken from the scene was not tested.

In his sole point of error, Carpenter contends that the evidence supporting his conviction is legally insufficient to show he was the perpetrator of the crime.

In evaluating legal sufficiency, we review all of the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts

---

[2]Moreno testified that "the probability of selecting an unrelated person at random who could be the source of this DNA profile is approximately . . . 1 in 413.4 quintillion for blacks . . . . To a reasonable degree of certainty [Carpenter] is the source of the profile excluded identical twins."

4

to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

In order to convict Carpenter of burglary of a building, the State had to prove, beyond a reasonable doubt, that (1) Carpenter, (2) without the effective consent of the owner, (3) entered a building not then open to the public, (4) having intent to commit a felony, theft, or assault. *See* TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2011). "Enter" means to intrude "any part of the body" or "any physical object connected with the body." TEX. PENAL CODE ANN. § 30.02(b) (West 2011).

Carpenter argues that: (a) no witness saw him enter or leave the building; (b) no witness saw him with items taken from the building; (c) his fingerprints were not found at the scene; (d) no witness testified that he (Carpenter) committed the offense; (e) he made no confession or other incriminating statement; and (f) there was no security video evidence indicating he committed the offense. He contends that "the only evidence that the prosecution had was that some blood found on the broken window matched [his] DNA" and that evidence alone "should not lead to a conviction for burglary of a building . . . ." We disagree.

5

The store's window was broken, items were missing from the store, and some items from within the store were found on the ground outside the window. Carpenter's still-wet blood was found on the recently broken window. Viewing the evidence in the light most favorable to the judgment, we find that the evidence is legally sufficient to support the jury's verdict because a jury could have reasonably concluded that Carpenter was at the scene, that he broke the window with the rock or concrete found inside the store, that he reached into the building, and that he cut his arm on the broken glass while he stole various items he could reach from outside the window. Accordingly, we overrule this point of error.

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice


Date Submitted:     February 5, 2013
Date Decided:       February 6, 2013

Do Not Publish